**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, <br><br> Plaintiff, <br><br> vs. <br><br> Luby's Inc., a Delaware corporation, <br><br> Defendant. | No. CV 04-1094 PHX-DGC <br><br><br> **ORDER** |

Plaintiffs Sally Case and the Equal Employment Opportunity Commission ("EEOC") have filed a claim against Defendant Luby's, Inc., alleging that Luby's discriminated against Ms. Case because she is developmentally disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). Doc. #1. Plaintiffs now move for partial summary judgment on two issues: (1) whether Ms. Case was a qualified individual for the job of floor attendant at Luby's Restaurant and (2) whether she was disabled within the meaning of the ADA. Doc. #168. Defendant's cross-move for summary judgment on the grounds that Plaintiff is not disabled within the meaning of the ADA, Defendant possessed no knowledge of any disability, laches bars the present claim, and Plaintiffs' harassment, failure-to-accommodate, and retaliation claims are deficient. Doc. #172. For the reasons set forth below, the Court will grant in part and deny in part the parties' motions.

1  The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991), *cert denied*, 503 U.S. 920 (1992). The Court notes that the parties submitted substantially more briefing than was necessary in this case and wasted many pages arguing about factual issues that must be resolved by a jury. Such over-briefing should not occur again. The parties are advised that they must comply with the page limitations for motions in limine to be set forth in the Court's Order Setting Final Pretrial Conference.

**Background**

Ms. Case began working for Luby's Restaurant in August 1998 when she was 41 years old. Doc. #164, PSOF ¶ 1. She worked at Luby's until December 2000. *Id.* Both parties agree that Ms. Case performed the essential functions of her job as a floor attendant adequately. Docs. #161 at 1, #168. Ms. Case filed a charge with the EEOC on December 8, 2000, claiming that Luby's discriminated against her because of her disability "by harassing her, failing to provide a reasonable accommodation, further harassing her for opposing the unlawful discrimination, and by constructively discharging her." Doc. #1. Luby's acknowledged receipt of the EEOC claim on December 21, 2000. Doc. #172 at 17. The parties held an unsuccessful settlement meeting on May 1, 2001. *Id.* The EEOC investigation continued from June 2001 to November 2002. *Id.* On November 21, 2002, approximately two years after the initial charge was filed, the EEOC issued a letter of determination against Luby's. *Id.* The conciliation process began in December of 2002 and ended in July of 2003. *Id.* On May 27, 2004, the EEOC filed this lawsuit. Doc. #1.

**Discussion**

**I.     Summary Judgment Standard.**

Summary judgment is appropriate if the admissible evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. To preclude summary judgment the dispute must be genuine, that is, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**II.    ADA Claim.**

The ADA prohibits a covered employer from discriminating against "a qualified individual with a disability, because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). For Plaintiff to establish a prima facie case of discrimination under the ADA, she must show that she (1) has a disability, (2) is a qualified individual, and (3) suffered an adverse employment action because of her disability. *See Snead v. Metropolitan Property & Casualty Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). To prove that she is a "qualified individual with a disability," Plaintiff must show that she is (1) an individual with a disability as defined by the ADA and (2) could perform the essential functions of the employment position, with or without reasonable accommodation. 42 U.S.C. § 12111(8).

**A.    Qualified Individual.**

Plaintiffs contend that Ms. Case was able to perform the essential functions of her position at Luby's with or without a reasonable accommodation. Luby's argues that Ms. Case could perform the job without accommodation. No party claims that Ms. Case was

unable to perform the essential functions of her job. The Court accordingly will grant partial summary judgment in favor of Plaintiffs on this issue. Fed. R. Civ. P. 56(d).

**B.     Disability.**

Both parties move for summary judgment on the question of whether Ms. Case is disabled under 42 U.S.C. § 12102(2)(A). This determination involves three inquiries: (1) whether Ms. Case's condition is a physical or mental impairment, (2) whether the impairment limits a major life activity, and (3) whether the limitation is substantial. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Wong v. Regents of the University of California*, 410 F.3d 1052, 1063 (9th Cir. 2003).

**1.     Impairment.**

Plaintiffs claim that Ms. Case suffers from the mental impairments of mental retardation, impaired cognitive functioning, and organic brain syndrome. The Court will address these claims separately.

**a.     Mental Retardation.**

Plaintiffs' expert witness, Dr. O'Brien, opines that Ms. Case is mentally retarded. Dr. O'Brien bases this opinion on Ms. Case's low intellectual scores and the amount of assistance she receives from her family in housekeeping, shopping, finance management, and medications. Doc. #164, Ex. I at 2. Plaintiffs submit other evidence in support of this claim, including Ms. Case's history of educational and developmental disability and the testimony of her treating psychiatrist. Doc. #180 at 4.

Luby's expert, Dr. Hammer, disagrees. He finds Ms. Case to be highly adaptive and therefore not mentally retarded, noting that she has lived independently, owns a home, participates in household chores, cooks, and can write a check, count change, look up a plumber in the phone book, and describe how she would store various food items. Docs. ##161, 164, Ex. H at 35.

This conflicting evidence gives rise to a question of fact that must be resolved by the jury. The Court cannot make expert credibility determinations on summary judgment.

1 Luby's asks the Court to "disregard" the opinion of Plaintiffs' expert as "unreliable." Doc. ##161 at 2-6, 172 at 5-6. Specifically, Luby's argues that Dr. O'Brien did not engage in appropriate adaptive testing. *Id.* Luby's cites *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), but has made no motion to strike the testimony of Dr. O'Brien. Doc. #161 at 4. Nor does Luby's address the specific criteria set forth in *Daubert* or Federal Rule of Evidence 702 or request a hearing under Rule 104(a) to determine the admissibility of Dr. O'Brien's testimony. The Court cannot simply choose to disregard the testimony of an expert based on one party's argument that it is unreliable. Absent a showing that expert testimony should be stricken under the criteria of *Daubert* and Rule 702, such credibility determinations must be made by the jury.

### b.   Organic Brain Syndrome.

Luby's contends that the expert testimony of Dr. Schulte on organic brain syndrome was disclosed for the first time in Plaintiff's motion for partial summary judgment and therefore must be disregarded by the Court. Plaintiffs do not dispute that Dr. Schulte's opinions were not previously disclosed, but argue that such disclosures were not required because Dr. Schulte is Ms. Case's treating physician. Doc. #180 at 5. In support of this argument, Plaintiffs cite cases holding that an expert *report* under Rule 26(a)(2)(B) need not be prepared by a treating physician because such an individual is not "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).

The Court's Case Management Order, however, required more than compliance with Rule 26(a)(2)(B). The order specifically stated that "Plaintiff(s) shall provide full and complete expert *disclosures* as required by Rule 26(A)(2)*(A)-(C)* of the Federal Rules of Civil Procedure by March 1, 2005." Doc. #18 ¶6(a) (emphasis added). Rule 26(a)(2)(A) provides that "a party shall disclose to other parties the *identity* of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." (Emphasis added.) This disclosure obligation is separate from the report requirement of Rule 26(a)(2)(B). Because Dr. Schulte's opinion about Ms. Case's organic

1 brain syndrome clearly falls within Rules 702, 703, and 705, Plaintiffs were obligated to
2 identify him as an expert witness by the Court's expert deadline even though he was not
3 required to prepare a report under Rule 26(a)(2)(B).  *See* Rule 26(a)(2)(C).  Having failed to
4 make this required disclosure, Plaintiff's may not use Dr. Schulte's expert opinion on
5 organic brain syndrome in these motions or at trial.

6 Plaintiffs cite no other evidence in support of their claim that Ms. Case suffers from
7 organic brain syndrome.  The Court therefore will grant summary judgment on this issue
8 in favor of Luby's.

9 **c.   Impaired Cognitive Functioning.**

10 Both parties' experts agree that Ms. Case has a below average IQ of about 70.  Doc.
11 #164, Ex. H at 57-58.  Plaintiffs ask the Court to rule that a subaverage IQ of 70, by itself,
12 qualifies as an "impairment"within the meaning of the ADA.  Doc. #180.  Luby's disagrees,
13 noting that the  Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition
14 ("DSM-IV"), provides that a diagnosis of mental retardation requires both an IQ of 70 or
15 below and substantial limitations in adaptive functioning.  Doc. #172.

16 In support of their claim that an IQ of 70 constitutes an "impairment" as a matter of
17 law, Plaintiffs cite only once case, *Price v. Nat'l Bd. of Medical Examiners,* 966 F.Supp.
18 419, 426 (S.D.W.Va.1997).  The plaintiff in *Price*, however, had been diagnosed with
19 dyslexia and the only issue was whether the dyslexia created a substantial enough
20 impairment of a major life activity to qualify for ADA protection.  The case did not address
21 whether subaverage intelligence constitutes an impairment.  Because Plaintiffs cite no
22 other case law in support of their claim, the Court cannot conclude that an IQ of 70,
23 standing alone, constitutes an impairment under the ADA.  Plaintiffs' motion for summary
24 judgment on this issue will be denied.

25 **2.   Substantially Limited in a Major Life Activity.**

26 In addition to possessing a mental or physical disability, Plaintiffs must also show
27 that Ms. Case is substantially limited in a major life activity in order to qualify for ADA
28

- 6 -

protection. *Wong*, 410 F.3d at 1063. "Major life activities" include caring for oneself, performing manual tasks, learning, working, reading, and thinking. *See Toyota Kentucky v. Williams*, 534 U.S. 184, 185 (2002); *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005). The ADA does not define the term "substantially limits," but the Supreme Court has explained that "to be substantially limited in the specific major life activity . . . an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Kentucky*, 534 U.S. at 185 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii)).

Plaintiffs argue that Ms. Case invariably is substantially limited in a major life activity because she is mentally retarded, citing the criteria for a diagnosis of mental retardation and dicta in *Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F. Supp. 653, 658 (D. Puerto Rico 1997). Luby's disputes these arguments and authorities and asserts that even mentally retarded individuals may be found not to be substantially limited in major life activities. Plaintiffs' "invariability" argument is premised on a finding that Ms. Case is mentally retarded. As explained above, this is a factual issue that must be decided by the jury after consideration of the disputed evidence concerning her condition. Because the Court cannot conclude as a matter of law and undisputed fact that Ms. Case is mentally retarded, it cannot conclude that she invariably is substantially limited by mental retardation.

Plaintiffs argue that Ms. Case is limited in many major life activities, including her ability to read, think, care for herself, and work. Doc. # 164, Ex. I at 5-6. Plaintiff's expert found that these impairments substantially limit her daily life activities. *Id.* Luby's expert disagrees, noting that "Ms Case [does] not have substantial limitations in adaptive functioning . . . ." Doc. #164, Ex. H. The parties present considerable factual evidence and arguments in their efforts to persuade the Court, all of which simply demonstrates the existence a factual dispute that must be resolved by a jury. Plaintiffs' motion for partial summary judgment on this issue will be denied.

**B.     Hostile Work Environment.**

Plaintiffs claim that Ms. Case was subject to a hostile work environment on the basis of her disability. Luby's has moved for summary judgment, arguing that Plaintiffs cannot satisfy the elements of such a claim. Doc. #172. To establish a hostile work environment claim under the ADA, Plaintiff must prove that (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *See Roberts v. Dimension Aviation*, 319 F.Supp.2d 985, 988 (D. Ariz. 2004); *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 233 (5th Cir. 2001).[1] As noted above, the Court finds that Plaintiffs have provided sufficient evidence to create a genuine issue of fact regarding whether or not Ms. Case is a qualified individual with a disability eligible for protection under the ADA.

In determining whether a work environment is abusive, the Court must consider the "frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999); *Harris v. Forklift Sys., Inc.*, 510 U.S. 963 (1993). Ms. Case testified that the general manager of Luby's, Ms. Nye, told her to "shut up" on numerous occasions, called her a "retard," and slapped her on the face. Doc. #164, Ex. A, O. She also reported that Luby's employees intentionally hid her bicycle in the men's room, blocked her way out of the kitchen when she tried to pass, barked like a dog at her when she

---

[1] The Ninth Circuit has not decided whether a hostile work environment claim is actionable under the ADA, but the parties do not raise this issue. *See Roberts*, 319 F.Supp.2d at 988; *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) (noting that "[o]ur court has not yet held that such a claim exists, let alone what its source in the statute might be. We decline to do so here.").

entered a room, and threatened to cut her arm with a bread slicer. Docs. #163, 164, Ex. A. Ms. Case testified that she believed the harassment was because of her disability. *Id.*

Luby's argues that "Ms. Case's allegations do not establish severe and pervasive harassment as required by law," noting that many of the "allegations are vague, conclusory, and lacking in sufficient detail to avoid summary judgment." Doc. # 172. The Court disagrees. Construing the evidence in the light most favorable to Plaintiffs, the Court finds that there are sufficient facts to raise a triable issue for the jury to consider.

Luby's further argues that the Court must grant summary judgment because Luby's did not know Ms. Case suffered from a mental disability and therefore "cannot have breached a legal obligation to accommodate that disability, nor can it be deemed to have harassed Ms. Case on the basis of that disability." *Id. See Hedberg v. Indiana Bell Telephone*, 47 F.3d 928, 932 (7th Cir. 1995) (it is intuitively clear from the ADA's language that an employer cannot fire an employee "because of" a disability when it had no knowledge of the disability). Luby's also contends that Plaintiffs have not proven the required elements to establish a claim because the allegations do not "reflect any relation between the alleged conduct and Ms. Case's alleged disability [and] certainly . . . do not evidence that Ms. Case's alleged disability actually motivated the conduct." Doc. #172.

In response, Plaintiffs offer testimony that Luby's was informed by at least two individuals that Ms. Case suffered from a developmental disability. First, Ms. Case's sister testified that she met with Ms. Nye approximately 20 times over the course of Ms. Case's employment to report incidents of harassment and to explain to Ms. Nye that Ms. Case was a "special" girl and required more patience. Doc. #164, Ex. D at 98. Ms. Case's sister also testified that on two or three occasions she called the 1-800 number Luby's provided for its employees to complain about working conditions and reported the ongoing harassment of her sister. Doc. #164, Ex. D. Second, Plaintiffs offer testimony of Leticia Cano, a social worker from the Division of Developmental Disabilities who visited Luby's on June 13, 2000 and spoke with Ms. Nye. Doc. #164, Ex. T. Ms. Cano testified that she introduced

herself to Ms. Nye, explained where she came from, gave a brief job description, and then proceeded to inquire about Ms. Case's reduction in work hours. *Id.*

Construing the evidence in the light most favorable to Plaintiffs, the Court finds a genuine factual dispute as to whether Luby's knew of Plaintiff's alleged impairment. Doc. #172. Summary judgment generally is not appropriate if a party's knowledge or state of mind is at issue. *See Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (reversing summary judgment and stating that "[q]uestions involving a person's state of mind, e.g., whether a party knew or should have known of a particular condition, are generally factual issues inappropriate for resolution by summary judgment"); *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) (reversing summary judgment and quoting *Braxton-Secret*); *Consol. Elec. Co. v. United States*, 355 F.2d 437, 438 (9th Cir. 1966) (reversing summary judgment and stating that "[w]hen an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment"). Luby's's motion for summary judgment on the issue of hostile work environment will be denied.

### III. Laches.

Luby's argues that the Court should dismiss this lawsuit on the basis of laches because the EEOC unreasonably delayed the filing and prosecution of this lawsuit, resulting in prejudice to Luby's. Doc. #172. To establish a laches defense, Luby's must show unreasonable delay on the part of Plaintiffs and prejudice to Luby's. *See Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958-59 (9th Cir. 1979). Luby's argues that a forty-two month delay from the time Plaintiff filed her initial charge to the time the EEOC formally brought suit constitutes an unreasonable delay. Doc. #172. Luby's argues that although the EEOC promptly notified it of Ms. Case's complaint and initiated a timely investigation, twenty four months passed before the EEOC issued its letter of determination. *Id.* Luby's then notes an unexplained ten and one-half month delay

between the end of the conciliation phase in July of 2003 and the filing of the complaint in May of 2004. *Id.*[2]

Plaintiffs argue that forty two months is not an unreasonable period of time within which to bring a formal complaint and blame much of the delay on Luby's. Doc. #163 at 20. Plaintiffs argue that the EEOC expended "substantial efforts to conciliate the Charge" and point to the exchange of several settlement offers during the complained-of twenty four month period. Doc. #163

As noted above, "[t]he defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980) (citations omitted). Courts are "unwilling to rule that any set length of delay is per se unreasonable, but rather [will] look to the facts of each case to determine reasonableness." *E.E.O.C. v. Liberty*, 584 F.2d 853, 858 (8th Cir. 1978). "Laches questions are seldom susceptible of resolution by summary judgment, because 'where laches is raised as a defense the factual issues involved can rarely be resolved without some preliminary evidentiary inquiry.'" *Occidental Life*, 432 U.S. at 666.

Luby's cites several cases where laches barred a claim, but the decisions in these cases were based largely on the EEOC failing to provide any explanation for its delay or claiming workload as an excuse for the delay. *See Liberty*, 584 F.2d at 858 (the only justification for the delay is its heavy workload); *Alioto,* 623 F.2d at 88 ("The EEOC does

---

[2] Laches may properly be raised as a defense in this case because the defense applies to employment discrimination actions brought by the EEOC when such actions are not governed by a statute of limitations. *See Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 373 (1977) (stating that district courts have the power to provide relief to a defendant that has been "significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action"); *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88 (9th Cir. 1980) ("Laches . . . may be used as a defense to a Title VII action."); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 586 (9th Cir. 1993) (stating in an ADEA action that "laches is inapplicable when Congress has provided a statute of limitations to govern the action").

1 not suggest an excuse other than its backlog of cases for the nineteen month delay.");
2 *Boone*, 609 F.2d at 959 ("[plaintiff] offered no evidence from which this court ... could even
3 infer an excuse for his seven year delay."). Here, Plaintiffs claim to have made "substantial
4 efforts to conciliate" and blame Luby's for much of the delay. Doc. #163. Construing the
5 facts in Plaintiffs' favor, Luby's has failed to show unreasonable delay as a matter of law
6 and undisputed material fact. The Court accordingly will deny Luby's motion for summary
7 judgment on the defense of laches.

**IV.   Failure to Accommodate Claim.**

Luby's argues that it had no obligation to accommodate Ms. Case's disability because it had no knowledge about her disability. As noted above, however, Luby's knowledge is a factual issue to be resolved by the jury.

Luby's argues that Ms. Case was capable of performing her job and did not require any accommodation. Luby's also argues that no accommodation was requested by or on behalf of Ms. Case and therefore that no obligation arose to discuss or consider such an accommodation.

Plaintiffs argue that Ms. Case required greater assistance and a softer approach in management and discipline. Plaintiffs assert that Ms. Case's sister requested such an accommodation from Ms. Nye. In support of their argument that a "softer approach" to management is an accommodation required by the ADA, Plaintiffs cite *Kent v. Derwinski*, 790 F.Supp. 1032, 1039-40 (E.D. Wash. 1991).

Luby's responds with a detailed factual argument. Luby's does not claim that a "softer approach" is not a required accommodation under the ADA and does not address the *Kent* case. Luby's instead disputes and characterizes Plaintiffs' evidence and makes factual arguments that such an accommodation was not required or requested. These factual issues must be resolved by the jury.

## V. Retaliation claim.

Luby's first argues that Plaintiffs cannot pursue a retaliation claim because Ms. Case did not assert such a claim in her initial EEOC charge. Citing *Occidental Life*, 535 F.2d at 542, Plaintiffs argue that the EEOC can pursue any charge included in the EEOC's determination. Plaintiffs also argue that because the determination in this case included retaliation and Ms. Case intervened in an EEOC case that contained that claim, retaliation is properly included. In reply, Luby's argues in a single sentence that the EEOC never filed a retaliation charge or gave Luby's an opportunity to respond, but cites no evidence in support of this assertion. Doc. #177 at 27.

Even though Ms. Case did not check the retaliation box, it is apparent that the EEOC investigation, including the retaliation claim, grew out of her charge of disability discrimination. "Subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *Farmer Bros.*, 31 F.3d at 899); *see Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). Similarly, allegations not included in the EEOC charge may be considered if the new claims are "'like or reasonably related to the allegations contained in the EEOC charge.'" *B.K.B.*, 276 F.3d at 1100 (citations omitted). Because the retaliation claim investigation in fact grew out of Ms. Case's charge, and is like or reasonably related to her charge, the Court will decline to grant summary judgment on this basis.

Luby's also argues that there is no evidence of retaliation against Ms. Case in response to any protected activity. Plaintiffs respond by asserting that a variety of harassing actions occurred after Ms. Case and her sister complained about conditions of her employment and that two of the harassers, Ms. Nye and Mr. Martinez, knew of the complaints. Evidence cited by Plaintiffs, however, does not show the timing of these events or that they occurred after protected activity. Because such timing is necessary for

- 13 -

an inference of causation to be drawn, the Court concludes that Plaintiffs have not produced sufficient evidence from which a jury could conclude that "there was a causal link between the protected activity and the adverse [actions]." *Barnett v. U.S. Air, Inc.*, 196 F.3d 979, 994 (9th Cir. 1998). Accordingly, the Court will grant summary judgment on Plaintiffs' retaliation claim.

**IT IS ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. #168) is **granted with respect to Ms. Case's ability to perform the essential functions of her job, but otherwise is denied**.

2. Luby's Motion for Summary Judgment (Doc. #172) is **granted with respect to Plaintiff's organic brain syndrome argument and retaliation claim, but otherwise is denied**.

3. The Court will set a Final Pretrial Conference by separate order.

DATED this 29th day of December, 2005.

_David G. Campbell_
David G. Campbell
United States District Judge

- 14 -